Deborah WURTZEL, Plaintiff,

v.

STARBUCKS COFFEE COMPANY,
Defendants.

No. 01CV0324TCPMLO.

United States District Court,
E.D. New York.

April 11, 2003.

Jeremy J. Deutsch, Deutsch, Tane, Waterman & Wurtzel, New York City, for Deborah Wurtzel, plaintiff.

George N. Tompkins, Jr., George N. Tompkins, III, Schnader Harrison Segal & Lewis, LLP, New York City, for Starbucks Coffee Company, defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Starbucks Coffee Company ("Starbucks" or "Defendant") moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, dismissing the Complaint of Plaintiff Deborah Wurtzel ("Wurtzel" or "Plaintiff"). Defendant also seeks to preclude the testimony of Plaintiff's proposed expert, Robert I. Goldberg, Ph.D., based on the crite-

ria set forth in Rule 702 of the Federal Rules of Evidence.

The Court heard oral arguments on March 14, 2003. For the following reasons, Dr. Goldberg's testimony is inadmissible and Defendant's Motion for Summary Judgement is GRANTED.

## BACKGROUND

### A. The Parties

Plaintiff is a resident of East Meadow, New York. Starbucks is a corporation existing under the laws of the State of Washington and maintains its principal place of business in Seattle. Starbucks operates a retail store at 1228 Hempstead Turnpike in Uniondale, New York (the "Store").

### B. Factual Background [1]

This is a coffee-spill case. Plaintiff claims that she was injured when hot coffee spilled onto her as she making a right hand turn while driving in her car. Plaintiff contends that her injuries were caused by the negligence of Starbucks, who she claims failed to properly secure the lid to her coffee cup.[2]

On June 26, 1999, Plaintiff drove her convertible to the Store and parked her vehicle. Plaintiff then entered the Store and ordered a large, black brewed coffee and a large, iced coffee. Plaintiff requested flat, top lids for both drinks, "because [they were] to go." (Pl.Dep. Tr. 24). Plaintiff did not request either a bag or a tray to carry her beverages because she assumed they were located at the condiment bar.

When she received the coffee cups from the Starbucks employee, the lids were already placed on them. After she received the coffee cups, she walked over to the condiment bar. No coffee spilled from either cup. Plaintiff testified that she never opened the lid of the black coffee cup at the condiment bar. After realizing that there were no trays or bags at the condiment bar, Plaintiff did not request either from the counter due to the long line.

Plaintiff then walked across the parking lot to her car, carrying the black coffee cup in her right hand and the iced coffee in her left hand. Once again, no coffee spilled from either cup. Plaintiff also testified that she did not notice that the lid of her cup was insecure. (Pl.Dep. Tr. 67–68.)

When she arrived at her car, the top of the car was open, and she leaned into the car in order to place the black coffee into the vehicle's cup holder. The cup holder was located in a closed, covered console between the two front seats. While still holding the iced coffee in her left hand and the black coffee in her right hand, she opened the console cover with her right hand and placed the black coffee in the cup holder. The console had a "little latch" which releases without the assertion of pressure. (Pl.Dep. Tr. 52–53.) Plaintiff inserted her pinky into the latch and popped it back. Once again, no coffee spilled from either cup and Plaintiff did not notice anything amiss with the lid to the coffee cup.

Plaintiff then entered the car and placed the iced coffee on the passenger seat. Plaintiff then drove her car out of the

---

1. The material facts are generally not in dispute and are drawn from the parties 56.1 Statement pursuant to the Local Rules of the Southern and Eastern Districts of New York, unless otherwise indicated.

2. The Complaint also alleges that Defendant was negligent by serving coffee which was too hot and that it negligently failed to provide a bag or tray. However, Plaintiff has not argued these claims on the instant motion or provided any evidence to support such claims. They are therefore deemed abandoned.

Starbucks parking lot and proceeded East on Hempstead Turnpike en route to her home. She testified that she normally drives approximately 40 miles per hour on Hempstead Turnpike on weekends. (Pl. Dep. Tr. 60.)

While she was making a right hand turn onto Coolidge Drive, Plaintiff downshifted her transmission and applied her brakes. (Pl.Dep. Tr. 62–64.) As she was turning, she reached over and placed her right hand on the iced coffee to prevent it from tipping. (Pl.Dep. Tr. 95.) During this time the hot black coffee spilled onto Plaintiff's right leg, right buttock and the back portion of her left leg. Plaintiff did not see the coffee spill and does not know how much coffee came out of the cup.

At her deposition, Plaintiff testified that the cup "tilted" in the cup holder, but did not actually fall out of it. (Pl.Dep. Tr. 115.) However, according to the notes of one of Plaintiff's treating physicians, Dr. Barry Douglas, Plaintiff gave a different account of the incident. (Tompkins Decl., Ex. H at 10.) Dr. Douglas's notes, taken during his initial consultation with Plaintiff, state that "and upon turning a corner the cup overturned, spilling the scalding coffee all over [Plaintiff's] right upper thigh." (Tompkins Decl., Ex. H at 10.) According to a letter written from Dr. Douglas to Dr. Adler, "[t]he [Plaintiff] gives a history of spilling scalding water when her hot coffee fell out of the cup holder." (Tompkins Decl., Ex. I.)

Plaintiff testified that she never looked at the lid of the black coffee to see if it was securely fastened before the alleged accident and that she does not know that the lid was not, in fact, secured when she left Starbucks.

## C. Plaintiff's Proposed Expert

Plaintiff has retained Dr. Goldberg in order to support her position that the lid was not secured. Defendant argues that Dr. Goldberg's testimony should be excluded because he does not meet the criteria set forth in Rule 702 of the Federal Rules of Evidence.

According to Dr. Goldberg's report and deposition testimony, he performed the following tests:

I filled the container with boiling hot water, carefully attached the plastic cover and pressed it down over the container's lip entirely around the circumference. Then, wearing rubber gloves, I turned the filled container up-side down. Holding it in a vertical position over a tub, I shook it for a count of twenty, slowly within twelve inches. The only leakage was from the tiny steam hole in the lid and this small amount stopped after several shakes.

Then, emptying and refilling the cup, I pushed the lid only partly closed making sure that at least fifty percent of the cap was engaged around the container. Changing the procedure, I tipped the cup about fifteen degrees. Some drops of hot water leaked from the steam hole but quickly the pressure of the water pushed the lid off the container and the hot water spilled into the basin.

(Tompkins Decl., Ex. F; Tompkins Decl., Ex. E at 246–52.)

Dr. Goldberg's report also stated:

When the seal between the lid and the container is not tightly fitting, *under normal handling circumstances*, the hot coffee within the container will tilt toward the opened side, exert pressure against the partly opened lid and force it open much wider. This is the sequence that develops into a substantial spill . . .

From my knowledge of containers and the tests performed on the closures as noted above, it is my professional opinion that the spill of hot coffee was en-

tirely the result of improper closing of the lid on to the container. The unsuspecting Plaintiff, expecting to receive a properly closed coffee container, was given one that was only partly closed. From outward appearance, a partly closed container may looked sealed, but the lid only touches the container, it does not go over and seal against the rolled top edge of the container.

(Tompkins Decl., Ex. F)(emphasis added).

Dr. Goldberg testified that he never reviewed the Complaint or any deposition transcripts, and that he never met with or spoke to the Plaintiff about how the alleged accident occurred. (Tompkins Decl., Ex. E at 17–22, 136.) Dr. Goldberg's knowledge of the facts were derived exclusively with phone conversations with Plaintiff's counsel. Plaintiff's counsel did not give Dr. Goldberg, "much information" about how the alleged incident occurred. (Tompkins Decl., Ex. E at 135–136.)

For example, Dr. Goldberg did not know that Plaintiff's alleged accident occurred in an automobile or that the cup was in a cup holder. (Tompkins Decl., Ex. E at 137–138.) Consequently, he did not inspect the vehicle in which the accident occurred or a similar automobile. Dr. Goldberg made no attempt to recreate the alleged accident.

In addition, Dr. Goldberg did not know that the incident occurred while the automobile was making a turn, nor did he take into account the rate of speed. He acknowledged that these additional forces were not taken into account when performing his testing.

Dr. Goldberg also testified that the depth of the cup holder, the location of the cup holder and the diameter of the cup holder would be relevant to his analysis, specifically the amount of the deflection caused by the cup holder. (Tompkins Decl., Ex. E at 138–141.) However, according to Dr. Goldberg there would be no deflection caused by the cup holder, "since the diameter of the base is, from my recollection of size, would certainly be small providing a space around the cup so therefore there would be no pressure on the cup by the holder." (Tompkins Decl., Ex. E at 143.)

## D. Procedural History

Plaintiff filed a Summons and Complaint dated December 18, 2000, in the Supreme Court of the State of New York, Nassau County. On January 19, 2001, Starbucks removed the action to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441, and Defendant also filed an Answer on that date.

The Complaint alleges that after Plaintiff purchased coffee from Starbucks, "Starbucks negligently failed to secure the lid to the cup of coffee or provide a bag or tray to store the coffee even though Plaintiff clearly stated that the coffee was to go." (Tompkins Decl., Ex. A.) Plaintiff alleges that she suffered severe physical injuries, including permanent disfigurement and scarring to her leg. She seeks $250,000 plus punitive damages.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The materiality of a fact is governed by the substantive law at issue and an issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a summary judgment motion]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. "Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986) (citation omitted).

■ Rule 56(e) of the Federal Rules of Civil Procedure provides that affidavits in support of and against summary judgment "shall set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. The Wyatt Company,* 125 F.3d 55, 66 (2d Cir.1997). District courts should resolve evidentiary issues on summary judgment in order to conserve the "resources of the parties, the court, and the jury." *Id.*

## B. The Admissibility of Dr. Goldberg's Testimony

The district court functions as the gatekeeper for expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 of the Federal Rules of Evidence provides that if scientific, technical or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if the testimony is (1) based on sufficient facts or data, (2) the product of reliable principles and methods, and (3) the principles and methods utilized

have been applied reliably to the facts of the case. Fed.R.Evid. 702.

■ Under Rule 104(a), the Court must preliminary determine whether the proposed expert is qualified and whether his testimony is relevant. Fed.R.Evid. Rule 104(a). To determine relevancy, the Court must determine whether the proposed testimony has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Fed.R.Evid. 401. As the Supreme Court held in *Daubert,* " '[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful' ... Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786 (citation omitted).

■ Defendant strenuously argues that Dr. Goldberg's testimony is inadmissible on several grounds, including that he is unqualified as an expert, that his testimony relates to matters of common knowledge and that his tests are unreliable. Defendant's most persuasive argument, however, is that Dr. Goldberg's opinions do not fit the facts of the case at hand. As stated above, Rule 702 requires that "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

In holding that the district court did not abuse its discretion in excluding an expert's testimony, the Supreme Court has stated, "[t]he studies were so dissimilar to the facts presented in this litigation that it was not an abuse of discretion for the District Court to have rejected the experts' reliance on them". *General Electric Co. v. Joiner,* 522 U.S. 136, 145, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Similarly, in *Brooks v. Outboard Marine Corp.,* 234

F.3d 89, 92 (2d Cir.2000), the Second Circuit precluded the plaintiff's expert because "he had never seen the actual boat or motor either in person or in photographs, had never spoken to either of the boys involved in the accident, was unaware of the dimensions of the boat and the placement of the seats in relation to the motor, did not know precisely what happened and where the boys were positioned in the time immediately preceding the accident, and had never attempted to reconstruct the accident and test his theory."

Dr. Goldberg acknowledges that had no knowledge as to how the Plaintiff's incident occurred. He never met with the Plaintiff, did not review the Complaint, discovery responses or deposition transcripts. Not surprisingly, Dr. Goldberg's tests have no relationship to the alleged facts. Dr. Goldberg testified that his tests were based on, "normal handling circumstances." (Tompkins Decl., Ex. E at 218–222.) However, it is undisputed that the alleged circumstances were not "normal handling circumstances", but took place in a moving vehicle which was in the process of turning. Dr. Goldberg concedes that he did not take into account such factors as the size of the cup holder or how the cup fit within the holder.

Because the Court finds that Dr. Goldberg's tests are so dissimilar to the facts of this case, the Court finds that his testimony is inadmissible.

## C. Negligence

■ In order to demonstrate negligence in New York, a plaintiff must plead and prove that (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) the breach of that duty was the actual and proximate cause of the plaintiff's injuries. *See e.g., Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 215 (2d Cir. 2002).

■ Defendant contends that Plaintiff has failed to demonstrate that Starbucks breached a duty owed to Plaintiff or that the breach of any alleged duty was the proximate cause of Plaintiff's injuries. Specifically, Defendant argues that "Plaintiff has no knowledge as to what caused the coffee to spill and she merely *speculates* that it spilled because the lid, allegedly, was not secure." (Def. Mem. In Sup. at 6.)(emphasis in original.) Plaintiff contends that there is a genuine issue of material fact; to wit, whether Starbucks was negligent in affixing the lid onto the black coffee cup.

■ The parties agree that under New York law circumstantial evidence may be sufficient to make out a *prima facie* case of negligence. However, the parties dispute what circumstantial evidence is sufficient.

■ In *Bradish v. Tank Tech Corp.,* 216 A.D.2d 505, 628 N.Y.S.2d 807, 809, (2d Dep't 1995) the court stated, "[c]ases grounded on circumstantial evidence require a showing of sufficient facts from which the negligence of the defendant and the causation of the accident by that negligence can be reasonably inferred ... [t]he trier of fact must reach its conclusion based upon logical inferences drawn from the evidence, not upon speculation." (citations omitted.)

■ In the 1998 decision, *Gayle v. City of New York,* 92 N.Y.2d 936, 680 N.Y.S.2d 900, 703 N.E.2d 758 (1998), the New York State Court of Appeals further clarified what a plaintiff must establish in order to demonstrate proximate cause. The Court stated,

> Plaintiffs need not positively exclude every other possible cause of the accident. Rather, the proof must render those other causes sufficiently 'remote' or

'technical' to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence (*see, Schneider v. Kings Highway Hosp. Ctr.*, 67 N.Y.2d 743, 744, 500 N.Y.S.2d 95, 490 N.E.2d 1221). A plaintiff need only prove that it was 'more likely' (*id.*, at 745, 500 N.Y.S.2d 95, 490 N.E.2d 1221) or 'more reasonable' (*Wragge v. Lizza Asphalt Constr. Co.*, 17 N.Y.2d 313, 321, 270 N.Y.S.2d 616, 217 N.E.2d 666) that the alleged injury was caused by the defendant's negligence than by some other agency. The expert testimony, physical evidence and Gayle's testimony provided a basis in the record from which the jury could conclude that defendant's negligence was a proximate cause of the automobile accident.
*Id.* at 937, 680 N.Y.S.2d 900, 703 N.E.2d 758.

The Second Circuit has similarly held that, "while inferences of negligence may be drawn from circumstantial evidence, those inferences must be the only ones which **reasonably could be drawn** from the evidence presented. If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts." *Mehra v. Bentz*, 529 F.2d 1137, 1139–40 (2d Cir.1975)(emphasis in original).

Other courts have addressed this issue in contexts similar to the instant action. There is certainly no duty to serve coffee so that "no harm will come to a user no matter ... what the circumstances of its use." *Huppe v. Twenty–First Century Restaurants of America, Inc.*, 130 Misc.2d 736, 739, 497 N.Y.S.2d 306, 309 (Sup.Ct.1985)(rejecting argument that coffee cup was defective). In one case in which hot coffee spilled onto a plaintiff as she was driving, a court recently stated that "there is no evidence that [the cups] burst, collapsed or otherwise discharged their contents without the intervention of an unforeseen external force." *Martinelli v. Custom Accessories*, 2000 Mass, Super. LEXIS 188, 2002 WL 1489610 (2002)(citing *Huppe v. Twenty–First Century Restaurants of America, Inc.*, 130 Misc.2d 736, 739, 497 N.Y.S.2d 306, 309 (Sup.Ct.1985)).

Courts have also indicated that the actions of a plaintiff may prevent a finding of proximate cause. In *Huppe*, the court held, "[a]ll the evidence indicates that it was the sudden motion or jerking of the car, and of Mrs. Huppe, which caused coffee to spill out of the cups." *Huppe*, 130 Misc.2d at 740, 497 N.Y.S.2d 306. The court further stated that plaintiff had not established that defendant's alleged negligence caused plaintiff's injuries to be more severe. *Id.*

While circumstantial evidence *may* be sufficient to establish negligence in some cases, the evidence in the present action is not. The only circumstantial evidence provided to support the notion that the lid was not secure is that the coffee spilled. However, the fact that no coffee spilled as Plaintiff walked to the car, placed the coffee in the cup holder, or when she began driving severely undermines this proposition.

Moreover, it can not be said that Defendant's negligence is the only reasonable inference which could be drawn from the evidence. The inference that the turning of the car alone caused the coffee to spill and injure Plaintiff is entirely reasonable. Without any admissible expert testimony to the contrary, Plaintiff has not established that Defendant's actions caused or contributed in any way to her injury. In order to find to the contrary, a jury would be forced to rely solely on speculation.

Accordingly, Plaintiff's negligence claim is dismissed.

## D. Res Ipsa Loquitur

██ Plaintiff alternatively argues that the action may be submitted to the trier of fact based on the theory of *res ipsa loquitur.* In order for *res ipsa* to apply, a plaintiff must establish the following elements: (1) the accident is of a type that does not occur in the absence of someone's negligence; (2) it must be caused by an instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action on the part of the plaintiff. *Dermatossian v. New York City Transit Authority,* 67 N.Y.2d 219, 226, 501 N.Y.S.2d 784, 492 N.E.2d 1200 (1986).

██ Defendant argues that the coffee was not under its exclusive control, since the Plaintiff obviously had control of the coffee at he time of the incident. Plaintiff contends that the exclusive control requirement can be met if the Defendant had exclusive control at the time of the alleged negligence; i.e., at the time the lid was allegedly improperly affixed.

██ The New York Court of Appeals has held that the "exclusive control" requirement may be met in circumstances where the instrumentality was not under defendant's control when the accident occurred but where the defendant had exclusive control at the time of the alleged negligence. *Id.* at 227, 501 N.Y.S.2d 784, 492 N.E.2d 1200. The Court of Appeals has further stated that, "[t]he purpose [of the exclusive control requirement] is simply to eliminate within reason all explanations for the injury other than the defendant's negligence ... [t]he requirement does not mean that 'the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at

defendant's door.'" *Id.* (citations omitted.). In *Dermatossian* the Court of Appeals found that the plaintiff had failed to "fairly rule out the chance that the defect in the handle was caused by some agency other than defendant's negligence." *Id.* at 228, 501 N.Y.S.2d 784, 492 N.E.2d 1200.

In *Zentz v. Coca Cola Bottling Co.,* 39 Cal.2d 436, 247 P.2d 344 (1952), cited with approval by the *Dermatossian* Court, the court stated, "[o]f course, it must appear that the defendant had sufficient control or connection with the accident that it can be said that he was more probably than not the person responsible for plaintiff's injury". *Zentz,* 39 Cal.2d at 437, 247 P.2d 344.

The case of *Feblot v. New York Times,* 32 N.Y.2d 486, 346 N.Y.S.2d 256, 299 N.E.2d 672 (1973) is also instructive. In that case the Court of Appeals of New York ruled that *res ipsa* should not have been applied to a case in which a plaintiff contended that she was injured while entering an elevator which she claimed was under the exclusive control of the defendant. In so holding, the Court noted, "a jury finding based on speculation is a nullity ... the mere happening of an accident raises no presumption of negligence." *Id.* at 494, 496, 346 N.Y.S.2d 256, 299 N.E.2d 672 (citations omitted). The Court also quoted *Digelormo v. Weil,* 260 N.Y. 192, 199–200, 183 N.E. 360, for the proposition that "where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed which accords with its absence." *Feblot,* 32 N.Y.2d at 495, 346 N.Y.S.2d 256, 299 N.E.2d 672. In this regard, the Court stated that despite the fact that the plaintiff claimed at trial that she entered the elevator as soon as it arrived at the floor, based on the evidence it could be inferred that she "made a fran-

tic effort to enter the elevator while the doors were closing." *Id.*

Based on the above precedents it is clear that the doctrine of *res ipsa loquitor* is inapplicable to the present case. The fact that Defendant did not have exclusive control at the time of the accident is crucial. As stated above, it is entirely possible that the force exerted by the turning of the car alone caused the coffee cup to spill and injure Plaintiff. Notably, no coffee spilled before the car turned. Moreover, as in *Feblot,* Plaintiff's explanation is not the only reasonable inference. As Dr. Douglas testified, when the car turned the cup fell out of the coffee holder. Despite Plaintiff's testimony to the contrary, her statement is contradicted by Dr. Douglas's notes taken contemporaneously during the initial consultation.

Accordingly, the Court finds the theory of *res ipsa loquitur* inapplicable in the instant action.

## CONCLUSION

For the reasons stated above, Dr. Goldberg's testimony is inadmissible and Defendant's Motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED.