**Robert HOUSER, Plaintiff,**

**v.**

**NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.**

**6:15–CV–06297 EAW–MWP**

United States District Court, W.D. New York.

Signed 09/07/2017

James M. Duckworth, Voci Ravenell Bennett, Keller & Goggin, P.C., Philadelphia, PA, for Plaintiff.

Lynnette Nogueras–Trummer, Susan C. Roney, Nixon Peabody LLP, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### INTRODUCTION

Plaintiff Robert Houser ("Plaintiff") commenced this action pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et. seq.* ("FELA"), claiming that he had been injured by the negligence of his employer, Norfolk Southern Railway Company ("Defendant"), when he was riding as a passenger in a truck owned by Defendant and operated by Gary Miller ("Miller").[1] (Dkt. 1). Plaintiff alleges that Miller failed to exercise reasonable care in avoiding a motor vehicle collision with Suzanne Clarke ("Clarke") after Clarke lost control of her vehicle due to inclement road conditions. (Dkt. 60–5 at ¶ 2). The collision dislodged the front leftmost tire from the truck, causing Miller to lose control of the truck and veer left across lanes of traffic. (*Id.*). The truck came to a sudden and complete stop in a drainage ditch,

---

1. Miller has since died of apparently unrelat- ed causes. (Dkt. 60–16 at 2 n.2).

which jolted Plaintiff's knee into the dashboard, allegedly causing injury. (*See* Dkt. 60–2 at 30; Dkt. 60–5 at ¶ 2).

Presently before the Court is Defendant's motion to strike Plaintiff's expert report and Defendant's motion for summary judgment. (Dkt. 60). For the reasons set forth below, Defendant's motion to strike and motion for summary judgment are both granted, and Plaintiff's complaint is dismissed with prejudice.

## BACKGROUND

### I. The Accident [2]

Plaintiff and Miller were employed by Defendant as bridge and building mechanics. (Dkt. 60–2 at 7–8, 16). In this position, Plaintiff was primarily required to maintain bridges and to "replace ties on open deck bridges." (*Id.* at 8). Plaintiff had worked with Miller in some capacity for about 25 years. (*Id.* at 16).

On February 19, 2013, Plaintiff and Miller were tasked with setting up guardrails along bridges near Canisteo, New York. (*Id.* at 10–11). They arrived for work at Defendant's headquarters in Hornell, New York around 6:30 A.M., at which time Plaintiff and Miller participated in a "safety meeting" and a "job briefing." (*Id.* at 12–13, 15–16). Upon completing their duties at the first job site at around 10:00 A.M., Plaintiff and Miller packed the truck and began driving towards the next location. (*Id.* at 13–14). Miller drove the truck between job sites on the date of the accident. (*Id.* at 15–16).

The weather and road conditions on February 19th were "snowy, windy, and wet." (*Id.* at 16). Plaintiff described the truck's rate of speed as "relatively slow" and estimated that he and Miller were

traveling "around 25 MPH" due to the weather conditions. (Dkt. 60–11; *see* Dkt. 60–9 at 2 (noting that the truck was traveling at 25 MPH in a highway vehicle accident report, dated February 19, 2013, and completed by Plaintiff)). Plaintiff explained that they "were being real careful." (Dkt. 60–11). As Plaintiff and Miller approached a curve in the road, Plaintiff observed Clarke's car drive into focus as she began "fishtailing" and "swerving back and forth." (Dkt. 60–2 at 18). Plaintiff recalled that Miller "started slowing down immediately" and turned the truck as far right as he could—bracing it up against the guardrail—in order to avoid a collision. (Dkt. 60–11). Clarke's vehicle swerved across the double yellow line and collided with the front of the truck, (Dkt. 60–3 at 2 (New York State Department of Motor Vehicles Police Accident Report); *see* Dkt. 60–2 at 33), which dislodged the truck's leftmost front tire and caused the wheel rim to hit the road. (Dkt. 60–11). Plaintiff testified that the accident occurred within about five seconds from the time he first observed Clarke's vehicle. (Dkt. 60–2 at 106).

At this point, Miller lost control of the truck, and began "hollering, 'I can't hold it. I can't steer it.'" (Dkt. 60–11). The truck then veered into a roadside ditch, causing Plaintiff's leg to jam against the dashboard. (Dkt. 60–2 at 30). Upon coming to a complete stop, Miller and Plaintiff exited the truck and tended to Clarke and her passengers. (*Id.* at 26, 29). Clarke and her passengers were treated by medical personnel and ambulatory staff. (*See id.* at 30). Plaintiff returned to work for several weeks after the incident, but his condition continued to deteriorate as he experienced worsening chronic pain in his leg. (Dkt.

---

**2.** Unless otherwise indicated, the following facts are taken from Plaintiff's testimony (Dkt.

60–2) and Plaintiff's recorded audio statements (Dkt. 60–11).

60–2 at 68, 71–72).[3]

## II. Procedural Posture

On February 17, 2015, Plaintiff filed this action against Defendant and Clarke, alleging that his knee injury resulted from the negligence of both Defendant and Clarke. (Dkt. 1). Clarke was eventually terminated from this action pursuant to a stipulation of partial discontinuance, entered on July 1, 2016. (Dkt. 54).

After discovery concluded, on January 27, 2017, Defendant filed a motion for summary judgment and a motion to strike the expert report of Dr. Carl Berkowitz ("Dr. Berkowitz"). (Dkt. 60; see also Dkt. 63). Defendant contends that Plaintiff failed to raise a genuine dispute of material fact as to Defendant's negligence, and that Dr. Berkowitz's expert report should be stricken as speculative and unsupported by the record. (Dkt. 60–16). Plaintiff opposes Defendant's motions. (Dkt. 62).

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

"Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.'" *Rowe v. Wal–Mart Stores, Inc.*, 11 F.Supp.2d 265, 266 (W.D.N.Y. 1998). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

### II. Motion to Strike Expert Report

"[I]t is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment." *Bah v. Nordson Corp.*, No. 00 CIV 9060 (DAB), 2005 WL 1813023, at *6 (S.D.N.Y. Aug. 1, 2005) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)). "This is so because on a summary judgment motion, a 'district court properly considers only evidence that would be admissible at trial.'" *Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL

---

**3.** Two days after the accident, Plaintiff and Miller recounted the accident to Defendant's claims agent, Joseph Cochrane ("Cochrane").

(See Dkt. 60–11; Dkt. 60–12; see also Dkt. 60–2 at 40).

341135, at \*2 (E.D.N.Y. Mar. 9, 2000) (quoting *Nora Beverages v. Perrier Grp. of Am.*, 164 F.3d 736, 746 (2d Cir. 1998)).

Evidence contained in an expert's report therefore must be evaluated under Fed. R. Evid. 702 before it is considered in a ruling on the merits of a summary judgment motion. If a proffer of expert testimony in the form of an expert report is excluded as inadmissible under Rule 702, the summary judgment determination is made on a record that does not include that evidence.

*Cacciola v. Selco Balers, Inc.*, 127 F.Supp.2d 175, 180 (E.D.N.Y. 2001) (citing *Raskin*, 125 F.3d at 66–67).

## A. Rule 702 of the Federal Rules of Evidence

Rule 702 of the Federal Rules of Evidence sets forth the necessary requirements for the admissibility of expert evidence. Specifically, Rule 702 provides that the expert's opinion must: (1) "help the trier of fact to understand the evidence or to determine a fact in issue"; (2) be "based on sufficient facts or data"; (3) be "the product of reliable principles and methods"; and (4) have resulted from the expert's "reliabl[e] application of] the principles and methods to the facts of the case". The Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) recognized the "gatekeeping role" of a trial judge in determining the admissibility of expert testimony. *Id.* at 597, 113 S.Ct. 2786. "The court performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment." *Raskin*, 125 F.3d at 66. "The trial judge's gatekeeping task under Rule 702 and *Daubert* is two-fold: she must determine whether the evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Colon ex rel. Molina v. BIC USA, Inc.*, 199

F.Supp.2d 53, 69 (S.D.N.Y. 2001) (quoting *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786). "An expert's opinions that are without factual basis and are based on speculation or conjecture are ... inappropriate material for consideration on a motion for summary judgment," as are "[a]n expert's conclusory opinions." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).

## B. Dr. Berkowitz's Report Must be Stricken

At the outset, the Court notes that Dr. Berkowitz's "report suffers from several flaws, not the least of which is that it is inadmissible on summary judgment. Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support." *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F.Supp.2d 334, 352 (S.D.N.Y. 2005); *see, e.g., Scottsdale Ins. Co. v. United Indus. & Constr. Corp.*, 137 F.Supp.3d 167, 177 (E.D.N.Y. 2015), *reconsideration denied*, No. 12-CV-5732 (RRM) (LB), 2017 WL 52581 (E.D.N.Y. Jan. 4, 2017). Even assuming that Dr. Berkowitz's report was submitted in admissible form, it still fails to satisfy the strictures of Rule 702.

In determining whether an expert's opinion should be excluded as unreliable, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Dr. Berkowitz makes several faulty, unsupported, and conclusory assertions that form the basis

of his ultimately flawed opinion. The Court notes that Dr. Berkowitz has apparently reviewed various relevant materials in preparing his report. (Dkt. 60–6 at 23). These materials include Plaintiff's audio statement (Dkt. 60–11), the final police report resulting from the accident (Dkt. 60–3), Clarke's deposition taken on February 24, 2016 (Dkt. 60–4), and Plaintiff's deposition taken on February 23, 2016 (Dkt. 60–2).

 Nonetheless, Dr. Berkowitz appears to base his opinions on facts not supported by the record. For example, Dr. Berkowitz opines that "slippery road conditions caused both [Clarke] and [Miller] ... to lose control of their vehicles." (Dkt. 60–6 at 4). However, Plaintiff stated that it was only after Clarke's collision dislodged the front tire from the truck—causing the wheel rim to hit the ground—that Miller began to lose control of the vehicle. (Dkt. 60–11; see generally Dkt. 60–2 at 125 (testifying that his account of the accident on the audio file was accurate)). Dr. Berkowitz also opined that Defendant failed to properly train and supervise Miller, or alert him of the hazardous weather conditions existing on the date of the accident. (Dkt. 60–6 at 4–5, 7). Yet, there appears to be no support in any of the documents reviewed by Dr. Berkowitz for this assertion; in fact, there is evidence that Plaintiff and Miller participated in a "safety meeting" and a "job briefing" before they left Defendant's headquarters. (See Dkt. 60–2 at 12–13, 15–16).

Plaintiff also stated that Miller had been driving with particular care due to the inclement road conditions on the date of the accident. (Dkt. 60–11). Plaintiff's statements directly conflict with Dr. Berkowitz's finding that "[t]here *was no evidence* that [Miller] ... considered the hazardous effect of water on the roadway and its interaction with the safe movement of his motor vehicle." (Dkt. 60–6 at 5 (emphasis added); *see id.* (finding that Miller "did not know the importance of reducing speed when encountering an adverse weather condition.")). Indeed, Dr. Berkowitz opined that Miller should have reduced his speed below 30 MPH in order to have safely navigated the road conditions. (*Id.* at 4). However, Plaintiff informed Cochrane that he believed Miller was driving the truck at about 25 MPH, (Dkt. 60–11; *see* Dkt. 60–9 at 2), and no evidence was submitted to contradict this statement. By contrast, Clarke testified that she was driving about 40 MPH around the curve. (Dkt. 60–4 at 19).[4]

Dr. Berkowitz further determined that Miller failed to safely operate the truck given the road and weather conditions, which caused the truck "to make a sudden, unexpected and violent stop on the roadways [sic] opposite shoulder's ditch and embankment." (Dkt. 60–6 at 5). After acknowledging that the front left tire was blown off the truck during the collision, Dr. Berkowitz—amazingly—continued to blame Miller for the truck's uncontrolled momentum, stating that "[i]nstead of stopping, [Miller] continued to move his vehicle

4. Plaintiff takes the position that an estimation of a motor vehicle's speed is "not within the realm of a layperson's knowledge." (Dkt. 62–3 at 2). The Court disagrees. *See Gust v. Jones,* 162 F.3d 587, 595 (10th Cir. 1998) ("[P]ersons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions as to matters such as the speed of an automobile under their observation." (quotation and citation omitted)); *As-*

*plundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1197 (3d Cir. 1995) ("Other examples of this type of quintessential Rule 701 opinion testimony include ... the speed of a vehicle...."); *United States v. Carlock,* 806 F.2d 535, 552 (5th Cir. 1986) ("[C]ommon illustrations [of proper lay testimony] are an expression of opinion by a lay observer of a car's speed....").

forward under power riding on the front left wheel rim . . . ." (*Id.* at 14). This conclusion completely ignores the undisputed fact that the truck came to a "violent stop" only after it had sustained a near head-on-collision with Clarke's vehicle and had lost one of its front tires. (*See* Dkt. 60–2 at 23, 52; Dkt. 60–11).

Furthermore, there is no record evidence to support Dr. Berkowitz's opinion that any injury caused to Plaintiff's knee could have been "avoided if the passenger seat had not been pushed forward to accommodate special equipment regularly carried behind the front seat in the winter months." (Dkt. 60–6 at 16). During Plaintiff's deposition, he testified that the passenger portion of the cab "was a pretty confined seating area." (Dkt. 60–2 at 100). Plaintiff then indicated, "Another thing, we carry a lot of junk in that small cab. The seat could have been up a couple notches." (*Id.*). Plaintiff identified this "junk" as "flashers for road accidents" and "winter gear." (*Id.* at 101). Plaintiff was subsequently asked whether he had previously indicated "that the seat was pretty pushed forward," and Plaintiff responded, "No. I didn't say that. . . . I said those cabs are not spacious." (Dkt. 60–2 at 129). Plaintiff further testified that he "was sure" that his knee was not pressed up against the dashboard, and that he "had as much leg room as [he] could get to be comfortable." (*Id.*).

Dr. Berkowitz also, in conclusory fashion, opined that "[t]his accident could have been avoided and injuries reduced had [Miller] followed both the State of New York and National safe operating procedures for the existing adverse weather conditions." (Dkt. 60–6 at 6). However, he does not identify the "safe operating procedures" referred to or the record evidence that demonstrates that they were violated.

Finally, Dr. Berkowitz speculated that had Miller stopped the truck as soon as he noticed Clarke, Clarke would have simply been able to drive safely passed Miller and Plaintiff. (Dkt. 60–6 at 15). This opinion completely ignores the fact that Clarke caused the accident by fishtailing over the double yellow line in the middle of the road. There is no evidence that had Miller decided to refrain from taking quick evasive action, Clarke's vehicle would not have still crashed into the truck. Notably, the accident took place within five seconds from the moment that Clarke's vehicle came into view. (Dkt. 60–2 at 106).

■ "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. 'The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds for his or her conclusions.' " *Amorgianos*, 303 F.3d at 267 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). Here, the Court finds that Dr. Berkowitz's unsworn expert report is speculative, based upon an unsupported and inaccurate interpretation of the record evidence, and posits blanket conclusory statements of causation and liability. *See Major League Baseball Props., Inc.*, 542 F.3d at 319, 329 (finding that the expert opinion was not based on factual evidence); *Buckley v. Deloitte & Touche USA LLP*, 888 F.Supp.2d 404, 413 (S.D.N.Y. 2012) (finding that the expert "fail[ed] to provide 'sufficient factual foundation' to support his conclusion" and based his opinion on "conjecture" (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996))), *aff'd*, 541 Fed.Appx. 62 (2d Cir. 2013); *Macaluso v. Herman Miller, Inc.*, No. 01 CIV. 11496 (JGK), 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005) (finding that the expert's "analysis fails to meet th[e standard set

forth in Rule 702] because it is based on incorrect factual assumptions that render all of his subsequent conclusions purely speculative"). Therefore, the Court finds that Dr. Berkowitz's report is not sufficiently reliable, and, as such, it cannot be considered admissible evidence in opposition to Defendant's motion for summary judgment. Since Dr. Berkowitz's report has been excluded pursuant to Rule 702, the Court will consider the disposition of Defendant's motion for summary judgment upon the remaining submissions in the record. *See, e.g., Raskin,* 125 F.3d at 66–67; *Cacciola,* 127 F.Supp.2d at 180.

### III. Defendant's Motion for Summary Judgment

#### A. Defendant Carried Its Burden of Proof

Defendant argues that there is no evidence in the record that Miller acted negligently in operating the truck on the date of the accident. Under FELA, "any railroad engaging in interstate commerce 'shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.' " *Tufariello v. Long Island R. Co.,* 458 F.3d 80, 86–87 (2d Cir. 2006) (quoting 45 U.S.C. § 51). "To prevail on a FELA action, 'the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.' " *Bruno v. Metro. Transp. Auth.,* 344 Fed.Appx. 634, 636 (2d Cir. 2009) (quoting *Tufariello,* 458 F.3d at 87). "What constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept

governs." *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). However, "although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in our analysis." *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 544, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

"The ordinary summary judgment standard is considerably more plaintiff-friendly in FELA cases." *Curran v. Long Island R.R. Co.,* 161 F.Supp.3d 253, 256 (S.D.N.Y. 2016) (quotation and citation omitted). "Because there is a strong federal policy in favor of letting juries decide cases arising under FELA, the right of the jury to pass on factual issues must be liberally construed." *DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R.,* 237 Fed.Appx. 642, 644 (2d Cir. 2007) (quotations and citations omitted). As such, "[c]ourts apply a more relaxed standard of both negligence and causation to FELA negligence claims than to those arising under common law." *Coale v. Metro–N. Commuter R. Co.,* 621 Fed.Appx. 13, 14 (2d Cir. 2015). Despite this lenient standard, " 'claimants must at least offer *some evidence*' as to each element of negligence." *Siegel v. Metro–N. Commuter R. Co.,* No. 07 CIV. 6025 (DC), 2009 WL 889985, at *2 (S.D.N.Y. Apr. 1, 2009) (emphasis in original) (quoting *Sinclair v. Long Island R.R.,* 985 F.2d 74, 77 (2d Cir. 1993)).

Here, Defendant's submissions establish that Clarke's negligent operation of her motor vehicle—at speeds exceeding safe driving behavior on icy road conditions—caused the collision with the truck's front tire and resulted in Plaintiff and Miller uncontrollably veering into the nearby ditch and embankment. (Dkt. 60–3 at 2; Dkt. 60–4 at 57–58; Dkt. 60–8 at 2;

Dkt. 60–9 at 2; Dkt. 60–11). During Clarke's deposition, Clarke testified that she skidded on "black ice," which caused her to cross into the opposite lane and collide with the truck. (Dkt. 60–4 at 22, 47). Plaintiff testified that Miller lost control of the truck "when the front tire was removed" after Clarke's vehicle had crashed into the front of the truck. (Dkt. 60–2 at 23, 53; *see* Dkt. 60–11 (confirming that there was observable evidence where the wheel rim "skid across the road"); Dkt. 60–13 at 5 (photo of wheel rim)).

Defendant also submitted Plaintiff's audio statement where Plaintiff was recorded stating that Miller "did everything humanly possible he could have done to avoid this collision." (Dkt. 60–11).[5] Specifically, Plaintiff stated that Miller was driving "real careful" due to weather conditions, and that when Clarke's car fishtailed across the lanes of traffic, Miller "started slowing down immediately," steered the truck "up against the guard rail[, and] got as far to the right as he could to try to avoid the collision." (Dkt. 60–11; *see* Dkt. 60–13 at 4, 6 (photos of guardrail)).

Therefore, the Court concludes that Defendant has carried its initial burden of establishing that there is no genuine issue of material fact regarding its negligence or the negligence of Miller as its employee.

### B. Plaintiff Failed to Carry His Burden of Proof

### 1. Plaintiff Failed to Submit Admissible Evidence That Miller Negligently Operated the Vehicle

Giving due consideration to the relaxed summary judgment standard in FELA

cases, the Court still finds that Plaintiff's claim may not proceed to a jury. Plaintiff has failed to submit *any* evidence that Miller or Defendant was negligent. Plaintiff's self-serving speculative testimony to the contrary does not constitute sufficient evidence of negligence. *New World Sols., Inc. v. NameMedia Inc.*, 150 F.Supp.3d 287, 326 (S.D.N.Y. 2015) ("[U]nsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment."); *Brusso v. Imbeault*, 699 F.Supp.2d 567, 583 (W.D.N.Y. 2010) ("[A] plaintiff's deposition testimony alone is insufficient to defeat a motion for summary judgment."); *Wurtzel v. Starbucks Coffee Co.*, 257 F.Supp.2d 520, 525 (E.D.N.Y. 2003) (stating that a party may not rely on " 'mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment' " (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986))).

When confronted with his prior recorded statements as to Miller's exercise of due care and caution, Plaintiff appeared to indicate that he made these statements to protect Miller from being taken off the job force by the division engineer. (Dkt. 60–2 at 56–57). To this end, Plaintiff explained, "who knows what could have been done differently." (*Id.* at 31). Plaintiff further speculated, "Well, being a Monday morning quarterback, if we would have been going slower, it might have been avoidable. Or if he would have cut across the lane as she was coming to us, it could have been avoided, even being out in those conditions." (*Id.* at 48; *see also id.* at 120 ("After it's all said and done, maybe we could have been going slower.")). Significantly,

---

5. Defendant establishes the authenticity of the audio statements through the declaration of Mark Owens, Jr., Defendant's Senior Claim Agent. (Dkt. 60–10). Plaintiff does not challenge the authenticity of the audio statements; rather, Plaintiff argues that the audio state-

ments are inadmissible hearsay. (Dkt. 62 at 1–2). However, Plaintiff's audio statements are non-hearsay statements under Rule 801(d)(2)(A) of the Federal Rules of Evidence, as statements made by a party opponent offered by another party.

Plaintiff testified that his recollection of the facts as described in his audio recording was true and accurate. (*Id.* at 125; *see id.* at 60 (testifying that his memory was more accurate on the date he gave his audio statement)).

▮▮▮▮▮▮▮ "[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). FELA "holds an employer to a standard of 'reasonable foreseeability of harm' and measures that standard by what 'a reasonably prudent person would anticipate' in light of all the surrounding circumstances." *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 86 (2d Cir. 1989) (quoting *Gallick*, 372 U.S. at 117–19, 83 S.Ct. 659); *see Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992) ("Whether an employer has breached its duty of care is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition." (quotations and citation omitted)).

There is no record evidence evincing that the exigent circumstances confronted by Miller were conjured by any of his own actions. Plaintiff does not submit any evidence to contradict the inescapable conclusion that the accident resulted because Clarke lost control of her vehicle due to her speed and the inclement road conditions, crossed into oncoming traffic, and crashed into the truck. (Dkt. 60–3 at 2; Dkt. 60–4 at 57–58; Dkt. 60–8 at 2; Dkt. 60–9 at 2; Dkt. 60–11). Miller, who had

only about five seconds to react (Dkt. 60–2 at 106; Dkt. 62–6 at 105), steered the truck as far right as he could—bracing it along the roadside guardrail in an attempt to avoid the accident (*see* Dkt. 60–11 (stating that Miller steered the truck "up against the guard rail[, and] got as far to the right as he could to try to avoid the collision"); Dkt. 62–6 at 30 ("I think he got over to the right a little bit."); *see also* Dkt. 60–13 at 4, 6 (photos of guardrail)). Clarke collided with the truck, dislodging the front leftmost tire from the truck, which caused the wheel rim to fall upon the road, (*see* Dkt. 60–11 (stating that the wheel rim "skid across the road"); Dkt. 60–13 at 5 (photo of wheel rim); *see also* Dkt. 62–6 at 52). As Miller and Plaintiff veered left toward the drainage ditch, Miller warned Plaintiff, "hollering, 'I can't hold it. I can't steer it.'" (Dkt. 60–11).[6]

Thus, the Court finds that Plaintiff has provided no proof other than his speculative, self-serving, and self-contradictory testimony and the conclusory opinions of his expert in an attempt to demonstrate that Miller acted contrary to the expected behaviors of a reasonably prudent person under same or similar circumstances. This is wholly insufficient to defeat Defendant's summary judgment motion.

### 2. Plaintiff Failed to Submit Admissible Evidence That Defendant Violated Its Operating Procedures

Finally, Plaintiff also posits that there is a question of fact as to whether Defendant negligently failed to adhere to its own safety standards. (Dkt. 62 at 8). Specifically, Plaintiff points to two provisions in

---

**6.** Although Plaintiff's recitation of Miller's declaration is not specifically challenged as hearsay, the Court notes that the consideration of this statement does not entail hearsay concerns. As stated above, Plaintiff's audio statements are admissible as an admission by a party opponent pursuant to Rule

801(d)(2)(A) of the Federal Rules of Evidence. In addition, Miller's declaration falls within the "excited utterance" exception to the rule against hearsay because the statement relates to the collision with Clarke's vehicle, and was made moments after the accident took place. *See* Fed. R. Evid. 803(2).

Defendant's Highway Vehicle Operator's Manual. (*Id.*; *see* Dkt. 62–10 at 6, 11). The first provision states: "An employee driving a Company vehicle must comply with all applicable traffic laws and government regulations." (Dkt. 62–10 at 6). Plaintiff points to absolutely no traffic law or government regulation that was violated by Miller's conduct. In fact, the evidence indicates that it was Clarke, and not Miller, who crossed over the double yellow line into oncoming traffic. *See* N.Y. Veh. & Traf. Law § 1126(a); *Rodriguez v. Gutierrez*, 138 A.D:3d 964, 967, 31 N.Y.S.3d 97 (2d Dep't 2016) ("Crossing a double yellow line into the opposing lane of traffic, in violation of Vehicle and Traffic Law § 1126(a), constitutes negligence as a matter of law, unless justified by an emergency situation not of the driver's own making." (internal quotation omitted)); *see also Gadon v. Oliva*, 294 A.D.2d 397, 398, 742 N.Y.S.2d 122 (2d Dep't 2002) (holding that crossing the double yellow line was not excused by the emergency doctrine where the defendant braked during foreseeably inclement and slippery road conditions). To the extent that Miller crossed lanes of traffic after the collision occurred, the evidence is undisputed that this took place only after Clarke's vehicle had stripped the truck of its leftmost front tire, causing the wheel rim to fall upon the asphalt surface.

The second provision states: "Interiors of vehicles must be kept clean and free of nonessential items. When possible, loose articles should be transported in other than the passenger compartment and objects must not be transported on the rear window deck of automobiles. Unapproved devices or accessories may not be applied to any company vehicle." (Dkt. 62–10 at 11). Plaintiff contends that "additional materials or gear" should not have been stored in the passenger cab. (Dkt. 62 at 8). Presumably, this argument alludes to Dr.

Berkowitz's unfounded assertion that Plaintiff's seat was pushed forward too far which either caused or worsened Plaintiff's knee injury. As previously noted. Plaintiff testified that the seat may have been "up a couple notches," but he confirmed that he never testified that his seat was "pushed pretty forward." (Dkt. 62–6 at 99, 128). Instead, Plaintiff explained that he had merely observed that the passenger cab was not spacious, and that he had made himself as comfortable as possible. (*Id.* at 128). In addition, there is no evidence that the "road flares" stored behind the seat caused any actual impediment to Plaintiff's posture. (*Id.*). Indeed, Plaintiff testified that road flares are "required by the DOT." (*Id.*; *see* Dkt. 62–10 at 11 ("Interiors of vehicles must be kept clean and free of *nonessential* items" (emphasis added)).

Therefore, the Court concludes that Plaintiff has failed to carry his burden of submitting "some evidence" of negligence, and thus, Defendant's motion is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to strike and motion for summary judgment (Dkt. 60) are granted, and Plaintiff's complaint (Dkt. 1) is dismissed with prejudice. The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

SO ORDERED.